CITY OF ST. LOUIS, Appellant, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY and REGAL BUGGY COMPANY.

Division Two, February 15, 1916.

1. **CONDEMNATION: Leasehold: Measure of Damages: Loss of Business: Expense of Removal: Depreciation in Value of Goods.** In the condemnation of land for a public use neither the lessee nor the owner is entitled to be compensated, as for damages, for the cost of the removal of a stock of goods from the land taken to another place and their installation there, nor for a depreciation in the value of the goods caused by

their removal and reinstallation, nor for the loss of profits caused by an interruption of the business during the period of removal and its reestablishment. Such damages are so variant as to fall within the classification of speculative.

2. ——: ——: ——: **Fixtures.** In the condemnation of land the value of permanent fixtures, being such as may be considered a part of the real estate, is to be estimated as an element of damage; and the owner or lessee is entitled to be compensated for such trade fixtures as are contained in and affixed to the premises condemned. And under the apparent status of this case it is ruled that if the condemnor does not want such trade fixtures and the owner of the premises or the lessee elects to take them, the owner of the fixtures is entitled to be recouped in damages to the extent of their reasonable market value, as they stand, when confronted by the necessity of immediately tearing them out and reestablishing them elsewhere.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

Reversed and remanded.

*Charles H. Daues* and *Truman P. Young* for appellant.

(1) The measure of damages in condemnation suits for land condemned is the market value of the land taken. Lewis on Eminent Domain, secs. 685, 706; Cooley's Constitutional Limitations (7 Ed.), chap. 15, p. 819. (2) In cases where land to be condemned is under lease the measure of damages in favor of the lessee is the market value of his lease over and above the rent reserved. Lewis on Eminent Domain, sec. 719; Hughes v. Hood, 54 Mo. 352; Baltimore v. Rice, 73 Md. 307. (3) Where land is condemned for public use there can be no allowance for damages for the cost of removing personal property or for injury to such property during the process of removal, or for interruption of business. This rule is applicable whether the land is occupied by the owner or by a lessee. Railway v. Knapp-Stout & Co., 160 Mo. 396;

Railroad v. Schweitzer, 173 Mo. App. 650; Railroad v. Porter, 112 Mo. 361; Cobb v. Boston, 109 Mass. 444; Lewis on Eminent Domain, sec. 727; In re Petition of New York v. Brooklyn Bridge, 4 N. Y. Supp. 222; Railroad v. Pierce, 35 Hun, 306; Edmunds v. Boston, 108 Mass. 549; Williams v. Commissioners, 168 Mass. 366; In re N. Y. W. S. B. R., 35 Hun, 636; Becker v. Terminal Ry. Co., 177 Pa. 253; Raulet v. Railroad, 62 N. H. 561. (4) In those cases where an allowance has been made for the cost of moving personal property or for interruption to business, the decision has been based upon peculiar provisions of the statutes or constitution, and such decisions recognized that the general rule in the absence of such provisions does not allow the recovery of such damages. Blincoe v. Railroad, 16 Okla. 286, 4 L. R. A. (N. S.) 890 and note. (5) The Missouri cases which have allowed damages for the removal of property have done so only in those cases where the condemnor would have had to pay the entire value of the property removed, if it were allowed to stay upon the land. In order to reduce the amount of damages it has been held that buildings and appurtenances found upon the land condemned may be removed and the cost of removal charged as a proper element of damages. Bridge Co. v. Schaubacher, 57 Mo. 582; Railroad v. McGrew, 104 Mo. 282; St. Louis v. Brown, 155 Mo. 567; Kansas City v. Morse, 105 Mo. 511; Railroad v. Clark, 121 Mo. 199. That these cases do not sustain the proposition that a lessee or owner may recover the cost of the removal of personal property or damages to business was clearly pointed out in the case of Railroad v. Schweitzer, 173 Mo. App. 650.

*Rassieur, Kammerer & Rassieur* for respondent.

(1) Section 21 of the Bill of Rights protects private property in personalty as fully as it does in real estate. Mo. Constitution, art. 2, sec. 21; Railroad v.

McGrew, 104 Mo. 282; Bridge Co. v. Schaubacher, 57 Mo. 582; City v. Abeln, 170 Mo. 326; Monongahela Nav. Co. v. United States, 148 U. S. 312. (2) Under the Constitution of Missouri and the provisions of the charter of the city of St. Louis authorizing condemnation proceedings, the commissioners properly assessed as damages the cost of removing respondent's stock of goods and fixtures, the depreciation in value of its goods and fixtures caused by removal and reinstallation, and the injury to respondent's business caused by the interruption of same during the period of removal. City v. Abeln, 170 Mo. 326; Railroad v. McGrew, 104 Mo. 282; Bridge Co. v. Schaubacher, 57 Mo. 582; City v. Brown, 155 Mo. 545; Blincoe v. Railroad, 16 Okla. 286; Railroad v. Siegel, 161 Ill. 647; Railroad v. Heisel, 47 Mich., 399; Railroad v. Weiden, 70 Mich. 393; Railroad v. Getz, 113 Pa. 219; Printing Co. v. Railroad, 216 Pa. 504.

FARIS, P. J.—The city of St. Louis brought this action to condemn a strip of land for the western approach to its Municipal Bridge. Damages were assessed in favor of the several defendants by a commission of three freeholders, to whose report the city filed exceptions. The case came on for hearing in the circuit court of the city of St. Louis, wherein the exceptions of appellant city were overruled and it appealed.

The Regal Buggy Company, respondent herein, was the lessee for years of one parcel of the real estate which was condemned in this action. The lease of respondent, at the date of the making of the commissioners' report, had a little over three years to run. Specifically touching the land occupied by respondent the commission assessed the value of said land taken, plus the damages to the remainder of the parcel, at the sum of $41,310. They then appor-

tioned this sum by allowing to the owner thereof $38,610, and to this respondent, as lessee, the sum of $2700, being the appraised value of its lease over and above the monthly rent reserved. After making allowances of damages aforesaid the commission allowed the respondent the further sum of $8450 on account of injury to its business and for its damages and expenses arising from the removal of the fixtures and personal property of respondent from the premises condemned to a new location and for installing said property therein. The commissioners' report, which was approved by the circuit court upon exceptions taken thereto, states the specific elements of damages going to make up the last mentioned sum thus:

"(1) For the cost of removal of their several stocks of goods and fixtures from their present place of business to new locations and installing said goods and fitting said fixtures therein;

"(2) For depreciation in the value of such goods and fixtures caused by the removal and reinstallation of the same;

"(3) For injury to their said businesses caused by the interruption of the same during the period of removal of their said stocks of goods and fixtures."

The allowance of damages for the three items above enumerated is the sole matter of contention here. It is conceded, even, that if these three items were proper subjects of damages, then that the amount allowed respondent therefor is fair and reasonable, but appellant contends that under the law of eminent domain of this State no such damages may be paid by the condemner to him whose land is taken for public uses.

These three propositions and the contentions of appellant and respondent *pro* and *con* respectively, form the points up for decision.

OPINION.

As forecast there is no contention made by appellant that respondent as the owner of a lease for a term of years was not entitled to compensation therefor; nor that the amount of damages awarded as the market value of respondent's lease, to-wit, $2700, is unfair or unreasonable. It is only the damages awarded for the three items set out in our statement herein that are in controversy.

I. For convenience of discussion we will consider all items or elements of damages together, except that having to do with the fixtures, which we leave for subsequent separate discussion, since, under the law as we view it this may be conveniently done. In brief, these elements have to do with the allowance of damages (a) for the removal of the stock of goods of respondent from the right of way taken to a new location and placing them therein; (b) for depreciation in the value of said goods, caused by such removal and re-installation, and (c) for injury to the business of respondent on account of the interruption or cessation thereof during the period of removal of said stock of goods and fixtures.

*Damages in Condemnation: Loss of Business Profits, Expense of Removal and Depreciation in Value of Goods.*

When this case was argued, the writer was of the opinion that it ought to be affirmed upon principle if not upon authority; but upon coming to examine the authorities I have been forced to a different view. Coming to the question of authority first, we have had our attention directed to but one case squarely on all-fours in favor of the allowance of damages for the expense of removal of personal property from the right of way condemned. That is the case of Blincoe v. Railroad, 16 Okla. 286, 4 L. R. A. (N. S.) 890. In the latter case the question of the allowance of such

expenses was squarely before the court and he whose lease was taken was adjudged entitled to expenses of removing certain personal property, to-wit, lumber, from the lands taken. In that case, however, the learned court admitted that the rule in other jurisdictions was contrary to the conclusion reached; but it held that the law in Oklahoma warranted a different holding because of the language of the statute of that State, which in substance required the commission *to consider the injury which the owner of the land might sustain and assess the damages caused him by reason of the appropriation* of his lands.

The case of Philadelphia & Reading Railroad Co. v. Getz, 113 Pa. St. 214, is urged upon us as announcing a rule in favor of the contention that damages of the sort here under discussion may be allowed; but that case did not deal with ordinary personal chattels, but apparently with machinery and fixtures. Besides, the Pennsylvania court, in the later case of Becker v. Railroad, 177 Pa. St. 252, held to the contrary, in that they held that it was proper to refuse to allow proof as to the expense of the removal from such land of the personal property of him whose land was being taken, and said that the expense of such removal could not be considered as an element of damages for the condemnation of real estate for public uses.

The case of Atchison, Topeka & Santa Fe Railroad Co. v. Schneider, 127 Ill. 144, is urged as an authority for the awarding of damages of the sort here under discussion. But we need not consider whether that case is an authority or not, for the reason that it was distinguished and practically overruled by the later case of Braun v. Railroad, 166 Ill. 434. So, we cannot see that respondent's contentions are at all aided by either of the above cases.

The case of Railroad v. Piel, 87 Ky. 267, is cited by respondent as an authority for a modicum of the position taken by it. This case seems to an extent to

bear out respondent's contention touching the phase of its right to damages for and during the interruption of its business caused by the taking of its property. We need not consider whether this is so or not, nor need we microscopically analyze the latter case, but pass it by, saying merely that it is opposed in its doctrine by the great weight of authority everywhere and in this State as well, and that in reaching the conclusion stated the learned court wholly overlooked and failed to consider the necessarily hypothetical and speculative character of such damages.   [United States v. Wiener, 127 C. C. A. 1. c. 385.]

The rule announced by Mr. Lewis in his excellent work on Eminent Domain, is as follows: "While it is proper to show how the property is used, it is incompetent to go into the profits of the business carried on upon the property.  No damages can be allowed for injury to business.  The reason is that the constitution and the statutes, as ordinarily worded, require only that just compensation shall be made for the property taken.   Just compensation, as we have already seen, where an entire property is taken, is the market value of the property, and where a part is taken, it is the value of the part taken and damages to the remainder by the taking and use of the part for the purpose proposed.  The business conducted upon the property is not taken and the owner can remove it to a new location or continue it upon the part of the property which remains.  Any incidental loss or inconvenience in business, which may result from a removal or change consequent upon the taking, must be borne by the owner for the sake of the general good in which he participates.  In a few instances the statute has expressly provided that compensation should be made for injury to business." [Lewis on Eminent Domain, sec. 727; Central Pacific R. R. Co. v. Pearson, 35 Cal. 247; Pause v. Atlanta, 98 Ga. 92, 58 Am. St. 290; Jacksonville & S. E. Ry. Co. v. Walsh, 106 Ill. 253; Chicago &

Evanston R. R. Co. v. Dressel, 110 Ill. 89; DeBuol v. Freeport & Mississippi River Ry. Co., 111 Ill. 499; Braun v. Metropolitan W. S. El. R. R. Co., 166 Ill. 434; Cook & R. Co. v. Sanitary District, 177 Ill. 599; Marshall v. Chicago, 77 Ill. App. 351; Sanitary District v. McGuirl, 81 Ill. App. 392; Whitman v. Boston & Maine R. R. Co., 3 Allen, 133; Cobb v. Boston, 109 Mass. 438; Pegler v. Hyde Park, 176 Mass. 101; Sawyer v. Met. Water Board, 178 Mass. 267; Bailey v. Railroad, 182 Mass. 537; Boston Belting Co. v. Boston, 183 Mass. 254; Nashua River Paper Co. v. Commonwealth, 184 Mass. 279; Railroad v. Knapp, Stout & Co., 160 Mo. 396; Railroad v. Continental Brick Co., 198 Mo. 698; Petition of Mt. Washington Road Co., 35 N. H. 134; Raulet v. Concord R. R. Co., 62 N. H. 561; Matter of Department of Public Parks, 53 Hun, 280, 25 N. Y. St. 9, 6 N. Y. Supp. 750; Van Buren v. Fishkill Water Works Co., 50 Hun, 448, 21 N. Y. St. 448, 3 N. Y. Supp. 336; Matter of Grade Crossing Comrs., 17 App. Div. (N. Y.) 54; Matter of Gilroy, 26 App. Div. (N. Y.) 314; Cincinnati Iron Stove Co. v. Cincinnati So. Ry. Co., 9 Ohio C. C. 103; Schuylkill Navigation Co. v. Farr, 4 W. & S. 362; Navigation Co. v. Thoburn, 7 S. & R. 411; Pittsburgh & Western R. R. Co. v. Patterson, 107 Pa. St. 461; Hamilton v. Railroad, 190 Pa. St. 51; Schonhardt v. Pa. R. R. Co., 216 Pa. St. 224; Porter v. Scranton City, 36 Pa. Supr. Ct. 218; Fuller v. Edings, 11 Rich. 239; Eddings v. Seabrook, 12 Rich. 504; Railroad v. Chamblin, 100 Va. 101; Hunter v. Railway, 107 Va. 158; Studler v. Milwaukee, 34 Wis. 98; Esch v. Railroad, 72 Wis. 229; Union Steamboat Co., 39 Fed. 723; Bigg v. Corporation of London, L. R. 15 Eq. Cas. 376; Queen v. Vaughn, 4 L. R. Q. B. 190.]

In the case of Pause v. Atlanta, 98 Ga. 92, l. c. 105, the Georgia Supreme Court said: "The measure of her damages is the injury to her property which is injuriously affected by the public improvement; in arriving at that damage, neither the profits in the busi-

ness conducted on the premises, nor the cost to the tenant of the fixtures and improvements placed therein nor the articles purchased for the purpose of enabling the lessee to conduct the business, nor diminution in value of fixtures, improvements or articles such as are removed by the lessee, can be recovered as damages; but the increased value of the premises for rent in consequence of the putting in of such fixtures and improvements may properly be considered in computing the damages to the leasehold estate.''

The general rule as regards including as elements of damages expenses of removal of personal property, as well as that regarding the status of fixtures, below discussed, is thus stated by Mr. Lewis: ''Fixtures upon the property taken must be valued and paid for as part of the real estate, and any depreciation in the value of fixtures upon the part not taken is to be taken into consideration, the same as damage to the soil itself. Where a railroad was laid through premises which had been fitted up for a water cure, so as to render it unsuitable for that purpose, it was held that the owner was entitled to the difference between what the fixtures and appurtenances were worth in connection with the property as a water cure (not exceeding their reasonable cost) and what they were worth to be removed from the premises and applied to other purposes. In a case in Pennsylvania it was held proper to show the expense of removal of machinery and fixtures as bearing upon the value of the property as it stood. But the damages to personal property, or the expense of removing it from the premises, can not be considered in estimating the compensation to be paid. But when both parties proceed upon the theory that the owner is entitled to the cost of removing machinery, the condemning party cannot complain. Where the statute provided that the commissioners should 'inspect said real property and consider *the injury which such owner may sustain by reason of such rail-*

*road;* and they shall assess damages which said owner will sustain by such appropriation of his land,' it was held that the words in italics required that compensation should be made for the removal of personal property.'' [2 Lewis, Em. Dom., sec. 728, citing Blincoe v. Railroad, supra.]

But this matter has also been before our Missouri courts and if we are now to hold that respondent is entitled to damages for the three elements under discussion, we must of necessity overrule two Missouri cases wherein the point involved was squarely lodged and wherein it was held that no such compensation is allowable under our laws. [Railroad v. Knapp-Stout & Co., 160. Mo. 396; Springfield S. W. Ry. Co. v. Schweitzer, 173 Mo. App. 650.] In the Knapp-Stout case, supra, at page 412, Judge GANTT, writing the opinion of the court, in defining the measure of damages, and touching the identical question of the allowance of damages of the sort here under discussion, said:

''It is the settled law of this court that the measure of compensation and damages in cases in which only a part of a tract is condemned, as in the case at bar, is the market value of the land taken for the right of way, and the damages to the remainder by reason of the railroad running through it, less any benefits that are peculiar to the tract of land arising from the running of the road through it. [Bridge Co. v. Ring, 58 Mo. 491; Railroad v. Waldo, 70 Mo. 629; Railroad v. Story, 96 Mo. 611; Railroad v. Baker, 102 Mo. 553.]

''Injury to business, loss of profits, inconvenience to the owner, damage to personal property or the expense of removing it, are not to be estimated as distinct elements of damages.''

In the very late case ruled by the Springfield Court of Appeals practically all of the Missouri cases were examined and discussed, and such of them as seem upon casual glance to oppose the conclusion

reached, were successfully distinguished. Many of these cases are urged upon us as announcing a different rule, but we do not think they so far announce a different rule when carefully considered and when the precise point up for judgment is regarded, as to warrant us in overruling those on all-fours; *a fortiori,* when they but follow the overwhelming weight of the authorities upon these questions everywhere. Since all of these cases have been so lately, fully and ably discussed in Railroad v. Schweitzer, supra, we need not take up space to consider them again.

In the Knapp-Stout case, supra, precisely the same question was before this court that was before the Oklahoma court in the Blincoe case, viz.: the question of whether he whose land was taken for public uses could recover the expenses necessarily incurred in the removal of personal property from the land, to-wit, lumber, lying thereon. In both cases parts of lumber yards were taken, yet we ruled that such expenses were not proper elements of damages.

At first glance it is to be conceded that there exists a difficulty in finding a reason for not compensating the owner of personal chattels who is compelled to remove them, for his expense in so removing them to a point at least, beyond the edge of the right of way. It is equally clear, on the other hand that no logical reason can be found for compensating him for the expense of removal beyond such point. This is so, for the reason that A might desire to move his chattels only into the next adjoining house, while B might desire to have his taken several blocks, or even several miles, and C on the other hand, his business being broken up, might desire to remove his goods to some other place, or city. No reason in logic therefore can be found for the condemner's paying more than is sufficient to move the personal property off the right of way. A rule which would require the condemner to do more

266Mo.45

would be variant and indefinite, and therefore specu-
lative.

It is obvious that a lessee stands in no better con-
dition touching his right to be compensated for ex-
penses of this sort than does the owner of the fee. In
fact, the reasons are more cogent for permitting the
owner of the fee to recover as damages expenses of
this sort than they are in favor of the lessee. For the
lessee may be compelled to move at the end of his
term; and since his occupancy of the premises is
founded on contract, it may even be said that the pre-
sumption is that he will move. Or if there be no such
presumption, or no presumption either way, the lessee
is not aided by a discussion of this moving matter, for
arguments in his favor in this behalf are founded upon
the presumption that he will renew his lease and re-
main at the end of his term. But as regards the owner
whose lands are taken, no requirement exists for his
removal at any time, unless he sells the premises—a
contingency too remote for consideration in this con-
nection.

We apprehend that back of the rule against al-
lowing damages of this nature also lie the considera-
tions that loss of profits during removal is necessarily
so speculative as to afford as a measure of computa-
tion no rule except a mere guess; that likewise, beyond
the mere moving of goods to a point just outside the
bounds of the right of way condemned, the expenses of
removal being variant, damages would be arbitrary
and highly speculative, and removal but to a point only
just beyond the edge of the right of way would fall into
the category *de minimis,* and that moreover, the inclus-
ion of expenses of removal of personal property and
compensation for loss of profits during removal, is
merged and included in the price paid for the ease-
ment to the owner, or to the lessee, as the case may be.
Viewed as a forced purchase by the public for the pub-

lic good, as a condemnation action is in the last analysis, the latter consideration seems of great weight. For if he whose land is condemned had voluntarily sold his land to a private purchaser, ordinarily no thought would occur to either one, absent agreement to that end, that the seller should be compensated by the buyer for the removal from the sold premises of mere personal goods and chattels. That one is a voluntary sale and the other an involuntary sale does not peculiarly detract from the force of the argument.

But be all these things as may be the overwhelming weight of authority both in this State and in all other jurisdictions is as we hold, and having had other views in the beginning, by reason of the apparent, rather than real, crying equities in the case, we have yet been compelled to follow the law as it is written both here and elsewhere. To rule otherwise would necessitate the overruling of at least two Missouri cases squarely in point and of most carefully distinguishing three or four other cases. [Railroad v. McGrew, 104 Mo. 282; Hannibal Bridge Co. v. Schaubacher, 57 Mo. 582; Railroad v. Porter, 112 Mo. 361.]

We therefore hold, in consonance with the great weight of authority everywhere, that respondent was not entitled to recover for loss of profits in its business during the removal of its stock of goods; nor for the expense of the removal of its stock of goods and personal property, as contradistinguished from fixtures, from its old location which was condemned, to a new location; nor for the depreciation in value of such personal property and stock of goods, caused by such removal and re-installation.

II. What we have said above disposes of a part of the questions involved in contention (1) supra, that is to that part of this contention having to do with the cost of the removing of mere personal property

and chattels. The other phase of the case mooted in both contentions (1) and (2) viz; that touching the cost of removal of trade fixtures, which we left over for subsequent separate discussion, presents a somewhat different question. We assume, of course, nothing further appearing, that the word "fixtures" is used in its legal and technical sense, and not as a mere mercantile designation applied to chairs, tables, iron safe, et id omne genus.

Condemnation: Fixtures.

A fixture appertains to the real estate itself, which real estate to the extent, at least, of an easement therein, is being taken by condemner. We need not enter into any intricate discussion of fixtures (since such a discussion does not belong here), for the reason above given, which is well-settled, to-wit: that a trade fixture such as is herein involved, and such as was to an extent involved in the case of Hannibal Bridge v. Schaubacher, supra, is a part of the realty; and since it passes ordinarily as between vendor and vendee, upon a voluntary sale, we see no reason why it should not pass to the condemner upon an involuntary transfer, such as this is. We find nothing in the Missouri cases, nor in the cases from other jurisdictions which seriously militates against this view. Those mentioned below sustain it. It seems to be right on principle; to do full justice and afford full compensation.

In passing we may say arguendo, that the view that the owner should be compensated for the expense of tearing out, moving and re-installing fixtures in another location has much of logical cogency. But it seems out of consonance with our own rulings, and subject to the objection that the expense of carriage from the old to the new location would be speculative, and so having reached a view which affords full compensation for the injury done, we hesitate to overrule our former holdings. Many of the cases from

other jurisdictions which have been urged upon us as sustaining all of respondent's contentions, are cases which allowed compensation for removing and re-installing fixtures, and ruling that such compensation was permissible. This for the reason, that if the owner of the land or lease condemned take such fixtures off the hands of the condemner, who, ordinarily, does not want them, thus minimizing the damages accruing, both the owner and the condemner ought to be held to the rule that their reciprocal duty toward each other is to so act as not unduly to augment the damages arising from the appropriation of the land.

In a very late case, decided in the United States Circuit Court of Appeals for the Second District, it was held that an award in a condemnation proceeding for the value of certain trade fixtures, to-wit, machinery of an engraving plant, was proper, the court holding that in condemnation proceedings where the land is taken in *invitum,* the rule which obtains as to such fixtures is analogous to that between vendor and vendee and not that between landlord and tenant. [United States v. Wiener, 127 C. C. A. 382.] In the latter case the court quoted with approval what was said in In re Block Bounded by Avenue A, 122 N. Y. Supp. 321, l. c. 339, wherein it was ruled:

"The city took the entire buildings as they stood, including the trade fixtures therein, and for, the purposes of this proceeding they must all be regarded as real property; that is, as between the tenant and the city, the trade fixtures were real property and must be paid for by the city the same as a building, and the tenant was under no more obligation to remove them than he would be to remove a building if he were the owner. As between the tenant and the owner, however, the trade fixtures were personalty, and could be removed, and therefore any award made for them would go to the tenant."

In the above case of United States v. Wiener, the court upon the other phases of this case, discussed supra, says: ''There seems to be no authority for an allowance. for the removal of the business as distinguished from the plant and machinery. The district court allowed $2500 as damages which may result from the change of location. This was based upon hypothesis and speculation and we are unable to find any controlling authority to support the award.''

Since houses, which are but fixtures to real. estate, pass to the condemner (Kansas City v. Morse, 105 Mo. 1. c. 519), and since trade. fixtures under the vendor and vendee rule would pass to the buyer, they pass here to the condemner and it must pay for them. Respondent, absent an election on its part and consent of the city to that end, could not take fixtures which the city had condemned, nor obtain as damages pay for moving property which by condemnation became that of the city. [Kansas City v. Morse, 105 Mo. 1. c. 519; Springfield S. W. Ry. Co. v. Schweitzer, 173 Mo. App. 650.]

. It follows from all this that respondent was entitled to be paid the reasonable market value of its fixtures (contra-distinguished from mere goods and chattels) which were contained in, and affixed to the leased premises condemned. But the apparent present status of the instant case causes us to further rule, that if appellant does not want these fixtures, and respondent elects, or has elected, to take them (or, as seems probable, has already taken them), then damages which appellant will be held to pay as such value of them should be recouped to the extent of their reasonable market value, as they stood in their old location, when confronted, however, as diminishing such value, by the necessity of immediately tearing them out and reinstalling them elsewhere.

Upon the other phases of the case and to the extent last discussed upon the latter one, we are of the

opinion that the court erred, and that for such error this case must be reversed and remanded to be re-tried in such wise as is not inconsistent with the views herein expressed. Let this be done. All concur.