*In re* WIDENING OF GRATIOT AVENUE, EAST GRAND BOULEVARD TO TOWNSEND (PARCELS 25, 27).

1. EMINENT DOMAIN—JUST COMPENSATION.

Under constitutional provision requiring that private property shall not be taken by the public or for public use without necessity therefor being first determined and just compensation first made or secured, nothing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred (Const. 1908, art. 13, § 1).

2. SAME—REMOVAL OF FIXTURES.

In awarding compensation to owner of land taken in condemnation proceedings where he removes the fixtures, the proper measure of damages is the value of the land so enhanced, less the value of the fixtures in view of the necessity of removing them, and, since the value of the fixtures as severed will be decreased to the extent of the cost of detaching and reattaching them elsewhere, the cost of such removal is to be considered in awarding damages (Const. 1908, art. 13, § 1).

3. SAME—MINIMUM AWARD FOR LAND—VALUE AND COST OF RE-
MOVAL OF FIXTURES.

In awarding compensation to owner of land taken in condemna-
tion proceedings wherein neither the value of fixtures removed
nor the cost of detachment was considered in making award,
the award represented at least a minimum value for damage
sustained and, on condemner's appeal, *held*, proper (Const.
1908, art. 13, § 1).

4. SAME—LEASEHOLD INTERESTS.

In condemnation proceedings a lessee is entitled to compensa-
tion for the appropriation of his leasehold interest (Const.
1908, art. 13, § 1).

5. SAME—TENANCY AT WILL—QUESTION FOR JURY—OWNER'S NO-
TICE TO TERMINATE.

A tenant at will has a leasehold estate in the land, and is en-
titled to compensation for the appropriation of that interest,
although it is for the jury to take into consideration the char-
acter of the leasehold and the right of the owner to terminate
the tenancy by giving proper notice.

6. SAME—DETERMINATION OF VALUE.

Determination of value in condemnation proceedings is not a
matter of formulas or artificial rules but of sound judgment
and discretion based upon a consideration of all relevant facts
in a particular case, value being only the effect of the relative
human desire for compared objects expressed in terms of a
common denominator (Const. 1908, art. 13, § 1).

7. SAME—DETERMINATION OF VALUE—USE OF PROPERTY.

All of the elements that enter into the determination of value
of a leasehold taken in condemnation proceedings cannot be
specified or anticipated as many of them are developed in the
course of litigation and since they vary with the character
of the property affected and the uses to which it is applied
(Const. 1908, art. 13, § 1).

8. SAME—TENANCY AT WILL—TENANCY FROM MONTH TO MONTH—
VALUE OF FIXTURES IN PLACE AND SEVERED.

Tenants, both at will and from month to month, are entitled
to compensation for the appropriation of their leasehold in-
terests, and where business conducted was that of drug store,
jewelry store and gear manufacturing, one factor in determin-
ing amount of award is the difference in value between the
fixtures used in the conduct of the business as a part of the
leasehold and their value as severed therefrom (Const. 1908,
art. 13, § 1).

9. SAME—DAMAGES TO TENANCY—REMOVAL OF TRADE FIXTURES—
TRANSPORTATION.

In determining damages to be awarded tenants at will or from
month to month in condemnation proceedings, the cost of
removal of trade fixtures is a proper element to consider but
the cost of transporting them to a new location is too specu-
lative an element (Const. 1908, art. 13, § 1).

10. SAME—TRADE FIXTURES—REMOVAL COSTS.

Trade fixtures used in conduct of drug store, jewelry store, and
gear manufacturing business were not stocks of goods nor,
usually considered, purely personal property, and while con-
sidered personal property as between landlord and tenant, in
condemnation proceedings they were properly considered as
realty and damages were allowable for removal costs (Const.
1908, art. 13, § 1).

Appeal from Recorder's Court for the City of
Detroit; Skillman (W. McKay), J. Submitted June
13, 1940. (Docket No. 107, Calendar No. 41,202.)
Decided September 6, 1940.

Condemnation proceedings by the City of Detroit
to widen Gratiot avenue from East Grand Boule-
vard to Townsend avenue, and at the intersection
of Warren avenue and East Grand Boulevard. Joint
award to Blanche Reid Harding, owner, and Willis
B. Baker, tenant, for cost of removing fixtures.
Awards to Louis Meier's Sons and to L. M. Gear
Company. City appeals. Affirmed.

*Paul E. Krause,* Corporation Counsel, and *Clar-
ence E. Page* and *Vance G. Ingalls,* Assistants Cor-
poration Counsel, for appellant.

*Oxtoby, Robison & Hull* (*Justin C. Weaver,* of
counsel), for appellees Louis Meier's Sons and L.
M. Gear Company.

NORTH, J. This is an appeal from a verdict in
condemnation proceedings instituted by the City of

Detroit, in the exercise of its power of eminent domain, to acquire land for the widening of Gratiot avenue from East Grand Boulevard to Townsend avenue. Appeal is taken from the verdicts given as to two parcels of land, known as parcels Nos. 25 and 27.

Parcel 25 consists of land and a building used as a drug store. Blanche Reid Harding, owner of the land, and Willis B. Baker, who occupies the premises for drug store purposes, are the joint owners of the trade fixtures in the drug store. The record does not disclose the nature of Mr. Baker's tenancy.

Parcel 27 consists of land and buildings owned by Julia Meier, and occupied as tenants from month to month by her sons, Louis F. Meier and Frank X. Meier, copartners doing business as Louis Meier's Sons, who conduct a jewelry store, and by these two sons and a third son, Julian Meier, as copartners doing business as the L. M. Gear Company, engaged in the manufacture of gears. Both of the mentioned businesses had been purchased by the sons from their father, the jewelry business in 1918, and the gear manufacturing business in 1925. The sons paid a monthly rental for the premises to their father until his death in 1933, and since that date have paid the rental to their mother.

At the hearing evidence was introduced to show that the cost of removing the trade fixtures of the drug store would be $500; the jury awarded the joint owners $150. Evidence was introduced for Louis Meier's Sons to the effect that the cost of severing and then reassembling and reattaching the fixtures in the jewelry store, including certain very large clocks, exclusive of the cost of transportation would be $1,584.50; and the jury awarded $600. As to the L. M. Gear Company, the evidence showed that the cost of severing and reattaching their machinery,

consisting of some 150 machines weighing from 1,250 pounds to 7 tons, would be $5,255.75; and the jury in this instance gave a verdict for $4,000.

The sole question on this appeal is whether it was proper for the jury to award damages for removal costs of trade fixtures.

Article 13, § 1, of the Constitution of Michigan (1908) provides:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

This provision has been given a liberal interpretation in this State. "Nothing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred." *In re Widening of Bagley Avenue,* 248 Mich. 1.

As to the owner of land, the fixtures enhance the value of the land and, in awarding compensation where the owner removes the fixtures, the proper measure of damages is the value of the land as so enhanced, less the value of the fixtures in view of the necessity of severing them. *City of Los Angeles* v. *Klinker,* 219 Cal. 198 (25 Pac. [2d] 826, 90 A. L. R. 148). Since the value of the fixtures as severed will be decreased to the extent of the cost of detaching and reattaching them elsewhere, the cost of such removal is to be considered in awarding damages. As to the owner of parcel No. 25, the cost of detaching the fixtures was proper to be considered, and since this cost was not considered, nor was the value of the fixtures considered in the verdict for the value of the land, it represents at least a minimum value for such damage, and was proper.

As to the owner of parcel No. 25 the verdict is affirmed. As to Willis B. Baker, although the record does not disclose the nature of his tenancy, his rights are at least those of a tenant at will and they will be discussed together with the rights of the other tenant-appellees.

A lessee is entitled to compensation for the appropriation of his leasehold interest. *In re Widening of Michigan Avenue,* 280 Mich. 539; *City of Detroit* v. *C. H. Little Co.,* 146 Mich. 373; *City of Detroit* v. *Detroit United Railway,* 156 Mich. 106. A tenant at will has a leasehold estate in the land (1 Tiffany on Real Property [2d Ed.], p. 214, 35 C. J. p. 1120), and is entitled to compensation for the appropriation of that interest, although it is for the jury to take into consideration the character of the leasehold and the right of the owner to terminate the tenancy by giving proper notice. *Sheehan* v. *City of Fall River,* 187 Mass. 356 (73 N. E. 544).

"Many technical rules have been promulgated for determining value, none of which is important. The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion based upon a consideration of all the relevant facts in a particular case. It is in the final analysis only the effect of the relative human desire for compared objects expressed in terms of a common denominator. The *Minnesota Rate Cases* (*Simpson* v. *Shepard*), 230 U. S. 352 (33 Sup. Ct. 729, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916 A, 18); *International Harvester Co.* v. *Kentucky,* 234 U. S. 216 (34 Sup. Ct. 853); *Block* v. *Hirsh,* 256 U. S. 135 (41 Sup. Ct. 458, 16 A. L. R. 165); *In re Widening of Bagley Avenue, supra.*" *In re Widening of Michigan Avenue, supra,* p. 548.

In the determination of value of a leasehold "it is impossible to specify all of the elements that enter

into such a problem. All of them cannot be antici-
pated. Many of them are developed in the course
of the litigation consequent upon the exercise of
the right of eminent domain. They will vary with
the character of the property affected and the uses
to which it is applied." *In re Widening of Michigan
Avenue, supra,* 551.

In the instant case the tenants of parcels Nos. 25
and 27 were entitled to compensation for the ap-
propriation of their leasehold interests. And, al-
though ordinarily a tenancy at will would seem to
have no value above the rent reserved, the peculiar
facts of the instant case are convincing that the
leasehold interests here in question had a value
above the amount of the rent reserved. As above
noted, in determining this value many factors must
be taken into consideration. Among these is the
difference in value between the fixtures as a part
of the leasehold and their value as severed there-
from. As to the propriety of considering the value
of the fixtures in the determination of the value
of the leasehold which is being taken, the case of
*Des Moines Wet Wash Laundry* v. *City of Des
Moines,* 197 Iowa, 1082, 1087 (198 N. W. 486, 34
A. L. R. 1517), is highly persuasive. The court there
said:

"It would frequently happen that market value
would be an unsatisfactory test of the value to a
tenant of a leasehold interest. Standing alone, it
is really no test at all, and oftentimes it would have
no market value. It might not be assignable at the
will of the tenant. Plaintiff's leasehold was com-
mandeered, and the obligation was upon plaintiff to
minimize consequent damage. One way of doing
this, and which was done, was to secure other
quarters. The value of the property taken, there-
fore, includes not only the lease, but the machinery
and fixtures used in connection therewith. The

removal of the machinery was a necessary consequence of the location of the highway, as the property, both as to the fee and the tenancy for years, was taken *in toto*. It argues nothing to say that the tenancy would have terminated at the end of three and one-half years, and a removal at that time would be necessary. We cannot assume that the tenancy would have sooner terminated. Nor are we dealing strictly with personal property, as the term is legally understood. The machinery must be regarded as fixtures, and, in order that the business could be carried on as it was when plaintiff's property was taken, these or similar machines and equipment were needed. The city did not want the machinery, could not use it, and, if taken by the city for just compensation, the city would have to sell or give it away. These appliances were essential to the existence of the laundry business, but in the condemnation that business was destroyed. There was no obligation on the part of the city to remove the machinery, and in the instant case it did not propose to do so. The value of the machinery, therefore, as installed, was one of the elements to be considered in estimating the value of the leasehold interest. It is generally held in condemnation proceedings, the property being taken *in invitum,* that the controlling principle is analogous to vendor and vendee and not between landlord and tenant. * * *

"In *Shipley* v. *Pittsburgh, C. & W. R. Co.,* 216 Pa. 512 (65 Atl. 1094), the doctrine is reaffirmed that the depreciation in value of the fixtures in place and the reasonable cost of removal should not be submitted to the jury as separate items for which a recovery could be had, but as evidence of the value of the right of undisturbed possession to the end of the term which had been taken from the plaintiff. * * *

"There is a distinction made between fixtures as such, and stocks of goods or personal property as contradistinguished from fixtures. In *City of St.*

*Louis* v. *Railroad Co.*, 266 Mo. 694 (182 S. W. 750, L. R. A. 1916 D, 713, Ann. Cas. 1918 B, 881), this distinction is noted, and.it is there held that if fixtures pass to the condemner they must be paid for; but if the owner elects to take the fixtures a·different rule must obtain.   It is said:

" 'If appellant does not want these fixtures, and respondent elects, or has elected, to take them (or, as seems probable, has already taken them), then damages which appellant will be held to pay as such value of them should be recouped to the extent of their reasonable market value, as they stood in their old location, when confronted, however, as diminishing such value, by the necessity of immediately tearing them out and reinstalling them elsewhere.' "

The language above quoted is highly pertinent to the facts in the instant case; and we hold that it is proper to consider the removal cost as an element to be considered in fixing the damages in accordance with the rule stated in the *Des Moines Case, supra.* In this connection it should be noted that cost of transporting severed trade fixtures to a new location was not herein claimed by appellees as an element of damage.   Nor could such cost be awarded as damages because, as has been held, it is too speculative.   *City of St. Louis* v. *Railroad Co.*, 266 Mo. 694 (182 S. W. 750, L. R. A. 1916 D, 713, Ann. Cas. 1918 B, 881).   See, also, Orgel on Valuation under Eminent Domain, §§ 67, 68 and 69, pp. 223–236.   Our review of the record is convincing that the "fixtures" herein involved were not stocks of goods nor, in the usual acceptance of the term, purely personal property; but that they were what is properly denominated "trade fixtures" and which although as between landlord and tenant might be personal property, as to third parties they may be properly considered as a part of the realty.   *In the Matter of the City of New York (Allen St.)*, 256 N. Y. 236 (176 N. E. 377).

Our review of the record is convincing that the verdict of the jury was neither excessive nor prej-

udicial to the rights of the petitioner. The fact that the rule stated in *Des Moines Wet Wash Laundry* v. *City of Des Moines, supra,* was not technically followed, tended to minimize rather than to enhance appellees' damages. The verdict of the jury is affirmed as to all the appellees. Costs to appellees.

BUSHNELL, C. J., and SHARPE, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.