244

**UNITED STATES v. 6,576.27 ACRES OF LAND, MORE OR LESS, IN McLEAN COUNTY, N. D., et al.**

Civ. No. 1603.

District Court, D. N. D., Southwestern Division.

April 14, 1948.

P. W. Lanier, U. S. Atty., for petitioner.

Halvor L. Halvorson, of Minot, N. D., for defendants.

VOGEL, District Judge.

This is a motion for "extraordinary equitable relief" made in behalf of former owners of lands taken by the United States Government through its right of eminent domain. The case is one of a great many arising out of what is known as the Garrison Dam Project in North Dakota. The Government is engaged in the construction of a dam on the Missouri River in McLean County, North Dakota, the purposes of which are statutorily set forth, and whereby it is expected that approximately 400,000 acres of land will be inundated or necessarily used in connection with such

inundation at points north and west of the place of dam construction. The very magnitude of the project has created infinitely difficult problems which the Government's representatives are attempting to solve without too great disturbance of the rights and privileges of the owners of lands which must be taken and of the agricultural economy of the state itself.

In this particular case, as in most, if not all, similar cases now in process of litigation, the Government has taken the lands designated by the Secretary of War through the filing of declarations of taking and deposits in court of the sums estimated by the Government to be the just compensation for the lands so acquired.

On March 9, 1948, this Court was presented with the Government's petition for condemnation herein, the declaration of taking, and other necessary pleadings, and on such date executed a Judgment on Declaration of Taking wherein it was provided that possession of the described property should be delivered to the United States of America on the 9th of April, 1948. The order was executed ex parte. At the time of its execution, the United States Attorney, upon inquiry from the Court as to the situation in which these landowners were at the time and as to whether or not any of them would be unjustly damaged or hurt by the taking of the land within 30 days, as requested by the Government, stated that "under no circumstances would the landowners be injured".

On April 8, 1948, one day prior to the date for delivery of possession by the owners to the Government, the instant motion was filed with the Clerk of this Court. The motion, in effect, asks this Court to amend its possessory order of March 9th requiring possession of the lands to be given to the Government on April 9th in such manner as will allow the former landowners the use of such lands for its usual farming purposes throughout the year of 1948. The motion is based upon an affidavit of counsel for the landowners made on information and belief, but reciting some matters of such general knowledge that the Court could well take judicial notice thereof. The affidavit sets forth that the landowners or a great majority of them

live with their families upon, and earn their livelihood from, the lands now taken, and that the date for the delivery of possession to the Government, April 9, 1948, is at the beginning of or within the ordinary seeding season of farmlands in that vicinity. The affidavit states:

"That great and unprecedented hardship will be suffered by these families if they are required to lay idle during 1948, to have no place in which to maintain their stock and no land to cultivate and farm for a living—their primary occupation as to most of them, and upon the income from which they depend for their livelihood."

A hearing was held on the motion, at which Colonel John S. Seybold, District Engineer in charge of the entire project, testified. It had been charged by the landowners that the taking of these particular lands was greatly in advance of the time the Government would actually require the land for any purposes whatsoever and that farming the land for the year of 1948 would in no way impede the Government in its project construction. The substance of Colonel Seybold's testimony was that the Government would not be using, working or operating upon the particular lands in question with the exception of "clearing operations", such as the cutting of brush and timber in coulees or draws, apparently in preparation for subsequent inundation, and that for this purpose the Government should have the right of entry on the land at any time it saw fit.

40 U.S.C.A. § 257 provides that the "* * * officer of the Government * * * authorized to procure real estate * * * shall be authorized to acquire the same for the United States by condemnation, under judicial process, *whenever in his opinion it is necessary or advantageous to the Government to do so."* (Emphasis supplied.)

This would clearly appear to leave the time of acquisition to the judgment of the authorized officer. It could be "whenever in his opinion it is necessary or advantageous to the Government". In addition thereto, it has uniformly been held that the nature, character and extent of the taking of lands through condemnation are not

246

open to judicial review in the absence of bad faith or abuse of discretion. United States v. Meyer, 7 Cir., 1940, 113 F.2d 387, 392.

This Court does not understand, however, that the owners in the instant motion are challenging the right on the part of the Government or the Secretary of War to determine the extent, amount or title of property to be taken, but are asking that this Court amend its order of March 9th and fix a different time for possession and terms upon which possession shall be delivered.

40 U.S.C.A. § 258a provides as follows:

"Upon the filing of a declaration of taking, *the court shall have power to fix the time within which and the terms upon which* the parties in *possession shall be required* to surrender possession to the petitioner."  (Emphasis supplied.)

The Government's position is that, "This section does not give the Court the right to say how long lands that have been taken by the Government shall be used by the land owners in farming operations, and does not give the Court the right to give to the land owner any use of said land after it has been taken by the government, for farming purposes."

The Government further argues that as it is now the owner in fee simple of the lands involved, becoming such on March 9, 1948, and that as the Court's order as of that date required that possession be given to the Government as of April 9, 1948, that this Court does not now have the right or power to amend such order extending the date for possession or making terms for the use of the property during the farming season of 1948.  Neither side was able to furnish the Court with any case directly in point.  As stated, the order of March 9th was made ex parte and without an opportunity on the part of the landowners to bring to the attention of the Court a situation which in fairness might require that the possessory date be some other than that set forth or that terms as to possession be fixed and provided by the Court.

■ The motion for "extraordinary relief", which the Court construes to be a motion to amend its possessory order, was timely made.  The situations of the parties have not been altered as a result of reliance upon such order of March 9th. Nothing has been changed.  No one will be jeopardized or damaged or affected in any way by an amended order any more than they would have been affected had such order been so executed in the first instance.  Furthermore, the present motion was filed with the Clerk of this Court prior to the date provided in the original order for the giving of possession to the Government.  This Court is accordingly of the opinion that it does have the power to amend such order in such manner as may provide justice to all parties and as will not impede the Government in its prosecution of the Garrison Dam Project.

■ 40 U.S.C.A. § 258a, supra, confers upon this Court the power to fix the *date for possession* and the *terms under which such possession shall be given.*  Going hand in hand with such power is the *duty* on the part of this Court to see that such date for possession and terms of possession are in accordance with the equities.  It seems to the Court that a possessory order under the facts and circumstances as heretofore outlined, which provided that possession must be given to the Government as of April 9, 1948, at the beginning of or during the seeding season, might very well work hardship and therefore injustice to the farm families who are currently residing upon and have been operating the lands in question and who have commenced or are about to commence their seeding operations.  The order, according to the record, was served upon them only a matter of a few days prior to the date for possession. In the very nature of things, it would be difficult, if not impossible, for such farm families to move by the date fixed in the order, much less for them to acquire other farm lands so that they could make their livelihood during the year 1948.

It is true that Colonel Seybold, in his testimony, and the United States District Attorney, in his statement to the Court, indicate that they have in no way and at no time intended creating hardships for the former landowners and that where feasible and where it would not interfere

with the construction of the project they intended to allow the former landowners to remain upon the lands and operate them upon payment of a "nominal rental", the Government at all times to have the right of entry.

They object strenuously, however, to this Court's amending its order of March 9th so as to provide terms for the residence upon and operation of the lands. They believe that the power to say whether or not the former owners may be allowed to remain upon and operate the lands for the balance of the farming season of 1948 and to fix the terms upon which such residence and operation should be allowed rests solely with the Government, now the actual owner of the lands. I can see no good ground for the Government's objection. In addition thereto, it is my belief that the power and the duty of providing for such time and terms rests squarely upon the Court. The effect of the Government's theory, as indicated in its opposition to any amendment as to time and terms, would be to transfer the power and duty provided by 40 U.S.C.A. § 258a, supra, from the Court to the officials in charge of the project.

Counsel for the objecting landowners states in his affidavit—although such statement is wholly without proof:

"That these defendants, or some of them, have been advised that refusing to accept the options made by the Corps of Engineers, they would not be considered as applicants for tenancy under lease, these defendants having objected to low appraisals, * * * ."

The inference, of course, is that the right of tenancy upon their former lands is being used as a club over the heads of the landowners, coercing or forcing them to agree to terms for the price of their lands, regardless of the fact that they may have believed that the market value was in excess of that set or offered by Government representatives. As indicated, such statement or inference is wholly without proof, but the very supposition or possibility of an improper use of the power and duty of fixing time of possession and terms thereof indicates the wisdom of the Congress in placing that power and duty upon the Court rather than upon an interested party, even though that interested party or its representatives may be entirely fair and considerate in the handling thereof.

There is no basis in the record or in the testimony before the Court which could lead anyone to believe that Government officials have been guilty of such improper conduct, but if the District Attorney's construction of the statute, 40 U.S.C.A. § 258a, should be held correct, then the power of fixing time and terms could, in the hands of thoughtless and over-avaricious officials, be used for improper and coercive purposes. The mere recitation of the charges made by inference in behalf of the landowners in the instant case—which, as stated, are completely unsupported by evidence of any kind—is not to be construed as in any way criticizing either the Government's attorneys, Colonel Seybold, or other officials in charge of the Garrison Dam Project. This Court's observation of the manner in which the Government attorneys and other officials have performed their duties in the past and have met and overcome the tremendous problems confronting them in the beginning construction of this project has indicated no desire on their part to create hardships or injustices to any of the persons affected. Regardless of that fact, Congress has specifically provided that the power and therefore the duty of fixing the time and terms of possession rests with the Court.

The "power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession * * *" means that the Court, upon whom such power is so conferred, can designate the actual time at which the Government may take physical possession of the property condemned, the manner in which such physical possession shall be delivered, and the terms thereof. "Terms" embrace, under the circumstances existing here, the power on the part of the Court to say that owners whose lands have been "taken" in, for example, the middle of the harvesting season, shall have the right to complete the harvesting of their crops in an orderly manner and

remove from the premises in an orderly manner such of their property as they have a right to take with them. The fixing of the time of possession and the terms of possession must, of course, be exercised reasonably and with due regard for the needs of the Government and the rights of the owners. In the instant case, no harm can come to the Government and its prosecution of its work will be in no way impeded by the fixing of terms whereby the owners could reside upon and operate the lands already taken for the farming season of 1948.

The order of March 9, 1948, will be amended so as to provide, in substance, that the former owners may reside upon and operate the lands until December 1, 1948; that such residence upon and operation of the land shall be in such a manner as will in no way impede or hamper the Government in its construction of the Garrison Dam Project; and that the former owners shall pay to the Government for their use of their former lands rentals usual and customary in the vicinity. An order will be so entered.