THE PEOPLE OF PUERTO RICO, ETC., Plaintiff, Appellant and Appellee, *v.* SOCIEDAD AGRÍCOLA MARIO MERCADO E HIJOS ET AL., Defendants and Appellees; ARTURO PICÓ SANTIAGO, Defendant, Appellee and Appellant.

No. 10441. Argued May 8, 1951.—Decided August 13, 1951.

*Víctor Gutiérrez Franqui,* Attorney General, *Clemente Pérez Martínez, Jesús Zequeira,* and *Alejandro Romanace,* Assistant Attorneys General, for appellant-appellee. *Córdova & González* and *Alberto Picó* for appellee-appellant.

MR. ACTING CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

On June 20, 1947, the complaint in this case, together with a declaration of taking and material delivery of the condemned property, was filed in the District Court of Ponce. Although the complaint was addressed against numerous defendants, the appeal before us only involves the defendant Arturo Picó Santiago, appellant herein, whose parcel of land of 1.56 cuerdas, equivalent to 6143.7889 square meters, to be segregated from a farm of 6.97 cuerdas, was taken. Four structures stood on the condemned parcel, wherein the appellant operated an industry for the manufacture of cement blocks. The plaintiff deposited the amount of $16,568.76 as compensation to the defendant, for the parcel of land as well as for the structures.

On the same day that the complaint was filed, the court entered an order vesting title over the properties involved in the proceeding in The People of Puerto Rico, and ordering the defendants to deliver material possession thereof within a term not to exceed 20 days from the date said order was served on them. The defendant Arturo Picó Santiago was not summoned until January 5, 1948, being served with a copy of the complaint, of the declaration of taking and of

the order of possession. This notwithstanding, and for the reasons hereinafter set forth, it was not until June 30, 1949, that defendant Picó surrendered the condemned parcel.

Upon answering the complaint, the defendant alleged that the parcel of land and structures taken were worth $40,010.68 and, furthermore, that because the land in question was to be condemned for the purpose of a public highway known as "Ponce By Pass," he suffered damages amounting to $10,500.

When Act No. 223 of May 15, 1948 (Sess. Laws, p. 774)., created the Court of Eminent Domain of Puerto Rico this case was removed to and heard in said court. By stipulation of the parties, approved by the court, it was agreed that the structures taken were worth $14,893.75, and pursuant to the evidence introduced at the trial, said court entered judgment granting the complaint and fixing definitively the value of the condemned property at $24,885.43. Therefore, the plaintiff had to pay to the defendant the sum of $8,316.67 plus legal interest from July 1, 1949, that is, from a day after the defendant had surrendered the property.

Both parties appealed. We shall now consider the appeal taken by the People of Puerto Rico and thereby decide some of the errors assigned by the defendant in his appeal.

■■ The plaintiff maintains in the first place that the court a quo erred in granting the defendant $600 to cover the expenses he incurred in removing the machinery for the manufacture of blocks which was located in the condemned parcel. There is no discussion as to the amount of this item for the parties stipulated that, if its award lay, the defendant had incurred in said expenses.

The lower court stated in its conclusions of law that the question involved was rather dubious inasmuch as neither Federal nor state courts have established a uniform doctrine and this Court has not had the opportunity to express its views. It decided, however, that without having to declare which is or should be the legal doctrine in point, in the case

at bar, "the machinery was attached to the floor of the structures and in order to remove said machinery some of the walls would have to be torn down. All the circumstances lead us to the conclusion that said machines were immovables. And since they were not condemned, it is only fair and sensible, in our judgment, for the plaintiff to pay the cost of removing said machinery from the real property it condemns. If in certain cases it is proper for the plaintiff to pay severance damages, that is, the damage or depreciation suffered by the remainder of an immovable when by condemnation part thereof has been segregated, we fail to see how in the instant case the immunity of the Government could be upheld to segregate one part of an immovable (the structure) without compensating, at least, the owner's expense in removing the other part of the immovable (the machinery) in order to use it somewhere else."

In our judgment, the court *a quo* did not err in deciding that the machines of the block factory, because of the manner it was proved that they were affixed to one of the condemned structures, constituted immovables. Subdivision 3 of § 263 of the Civil Code, 1930 ed., recites that immovables are: "Everything attached to an immovable in a fixed manner, in such a way that it cannot be separated from it *without breaking the matter*, or causing injury to the object," and subdivision 5 of the same Section: "*Machinery*, vessels, instruments or implements *intended by the owner of the tenement for the industry or works that he may carry on in any building* or upon any land and which tend directly to meet the needs of the said industry or works." (Italics ours.)

The evidence showed, also, that the machinery could not be removed without tearing down the structure in which it is located and that in order to do so the defendant obtained permission from the Assistant Commissioner of the Interior to tear down, at his expense, all the condemned structures, binding himself, moreover, to remove the rubbish in exchange for the material which he might be able to obtain therefrom

—see defendant's exhibit 4, letters of May 7, 1949, and June 9, 1949—and that in fact, the defendant proceeded to demolish them.

The question for decision is whether under these circumstances the plaintiff was bound to pay for the expenses incurred by the defendant in removing the machinery from his factory to install it somewhere else in his property in a new structure he built.

The plaintiff argues that the just compensation for the condemned properties to which § 2 of the Organic Act refers,[1] must include only their reasonable value in the market, pursuant to § 2 of Act No. 479, "To prevent speculation in the sale of real estate to The People of Puerto Rico and the agencies and instrumentalities thereof for purposes of public utility or social benefit; to fix standards for the fair and reasonable compensation to the owner in case of condemnation, and for other purposes," approved April 26, 1946.[2]

The limitation included in § 2 of Act No. 479 neither has nor can it have the scope attributed thereto by the plaintiff in view of the provision of § 2 of the Organic Act which

---

[1] Paragraph 9 of said Section provides that "Private property shall not be taken or damaged for public use except upon payment of just compensation ascertained in the manner provided by law."

[2] Section 2 provides as follows:

"In case of the purchase or condemnation of private property for purposes of public utility or social benefit, the compensation shall be based on the reasonable value in the market of such property, without including any increase due to well-founded and reasonable expectation that the property acquired, or other property similar thereto, or situated within the locality where the former is situated, may now or later be required for public use or social benefit, or be necessary for some use to which it can be applied only by the People of Puerto Rico or any agency or instrumentality thereof with power for the condemnation of private property.

"In case of the sale or condemnation of the private property to which the preceding paragraph refers, the compensation shall likewise not include any new increase by reason of the public improvements or expenditures made in the locality by the People of Puerto Rico through any of its executive departments, agencies or instrumentalities."

includes, not only just compensation for the condemned property but also just compensation for the damages to the property of the condemnee as a result of the taking. We have held this already in *People* v. *García*, 66 P.R.R. 478, laying stress on the fact that the phrase "or damaged" contained in our Organic Act does not exist in the Federal Constitution. That is why the federal cases cited by the plaintiff and which only involve the taking of the property, without including machinery, improvements, etc., are not applicable to the facts of the instant case.

In situations like this, both in Federal and in state jurisdictions, it has been held that when the improvement is attached to the condemned realty, compensation must be granted to cover the costs of removal, under the theory of a partial taking. See *Potomac Electric Power Co.* v. *United States*, 85 F. 2d 243; *United States* v. *Becktold Co.*, 129 F. 2d 473; *Des Moines Wet Wash Laundry* v. *City of Des Moines*, 198 N. W. 486; *In re Gratiot Ave., City of Detroit*, 293 N. W. 755; *City of St. Louis* v. *St. Louis, I. M. & S. Ry. Co.*, 182 S. W. 750; and see also Developments in the Law—Damages, 61 Harv. L. Rev., 113, 178–79 where it is stated: "Another element of loss frequently encountered is the cost of moving equipment and stock. Where the state constitution permits recovery for 'taking' only, compensation for these expenses is uniformly denied by the courts. If, however, an improvement has become attached to the realty, the costs of removal are granted on the theory of a partial taking, since the value of what remains untaken is determined by its cost in place less the cost of removal. And some courts have been lenient in applying the law of fixtures in order to allow recovery of removal costs under this theory."

Any doubt which might exist as to whether the machinery in the instant case formed part of the condemned realty is dispelled by plaintiff's express admission that the machinery could not be removed from the condemned building unless

the latter were torn down, and its written consent to have the defendant proceed to tear it down at his own expense. It is obvious that the machinery could not remain in the condemned property for the latter was to be used for a new road. Furthermore, one of the errors assigned by the plaintiff is that the court did not grant it a sum for the use of the condemned property by the defendant during the entire time it took him to remove the machinery and fixtures from his block factory and to surrender the property. Moreover, we must reject plaintiff's contention to the effect that if removal expenses were granted, an award would likewise have to be granted for the business losses caused by the interruption therein. Such item, if claimed by the defendant at any time, was expressly waived by him in the pretrial conference. (T. E. p. 17.)

In view of the attendant circumstances we consider that the lower court did not err in granting the item of $600 for costs of removal.

■■ The second assignment is to the effect that the court erred in deciding that the defendant did not have to pay to the plaintiff a reasonable compensation for the use and enjoyment of the condemned property during two years [3] and in not fixing the compensation for said use.

In connection with this error we shall consider defendant's assignment to the effect that the court erred in refusing to grant interest on the amount of the judgment from the date of acquisition until June 30, 1949.

In discussing these questions the court *a quo* said:

"After analyzing the evidence heard in this connection, we have reached the conclusion that there was express consent on the part of the plaintiff for the defendant to remain occupying

---

[3] According to plaintiff's theory, which was accepted by the defendant, to the effect that it is from the date on which the term given to the defendant expired, it would be one year and five months, for the defendant was summoned on January 5, 1948, and he was given 20 days to surrender possession, that is, until January 25, 1948, and he vacated the property on June 30, 1949.

these premises until June 30, 1949, on which date the defendant vacated the condemned parcel altogether. We do not doubt in the least that the defendant occupied this property during that time in good faith and for the convenience and benefit in a certain sense of the plaintiff, who was not going to use said properties immediately, inasmuch as the portion of the road at that place has not yet been begun. Had the defendant surrendered said property, the plaintiff would have incurred expenses in keeping watch over it so that no houses were clandestinely built thereon.

"Counsel for the parties have made an effort to enlighten the court in regard to their respective theories.

"The truth is that in the specific case under our consideration, we need not determine the legal doctrine which must prevail in Puerto Rico as to the value of the use of the condemned property, since two special circumstances concur here. That is, the defendant acted in good faith and with plaintiff's consent. Nor do we have to pass here on the legality of the permit granted to the defendant by the plaintiff. What we do decide now is that in the light of the facts involved, we find no act applicable to this situation. But since pursuant to the first paragraph of § 7 of our Civil Code we can not refuse to render a decision on this point, we understand that we must do it pursuant to the second paragraph of said Section, namely, in accordance with the equity involved. From the point of view of equity, we think that it would be unfair to make the defendant pay rent to the plaintiff, inasmuch as no one ever suggested it to him during the two years that he occupied said property, without being its owner. That would be to impose on the good faith of the defendant.

"On the other hand, it would not be fair either if the plaintiff had to pay legal interest on the amounts increased by the judgment that we shall render pursuant to our Findings of Fact and Conclusions of Law, for a property which has been in the possession, use, and enjoyment of the defendant. Therefore, we decide that plaintiff must not pay interest on the increase in value, pursuant to our judgment, until June 30, 1949. The amounts increased in our judgment will bear legal interest from July 1, 1949, until payment in full. The foregoing means that the actual taking, that is, the date on which the plaintiff came into possession, was June 30, 1949."

Of course, the trial court erred in applying § 7 of the Civil Code, for there is the applicable statute, namely, § 5(a) of the Eminent Domain Act, as amended by § 3 of Act No. 19 of 1942 (Spec. Sess. Laws, p. 82), which was construed by this Court in *López* v. *District Court*, 67 P.R.R. 163, 165 as follows:

"This clearly gives the district court authority to fix (1) the period within which the occupants must vacate the premises, and (2) the amount they must pay the State for use thereof from the date the State became the owner until the date they vacate the premises. . . ."

It should be noted that in said case we decided, moreover, that even after final judgment was entered in the condemnation case, the court was authorized under § 5(a) to fix the reasonable compensation which the occupants of the property had to pay for use of the properties until they surrendered possession.

Likewise in *Housing Authority* v. *Sagastivelza, ante*, pp. 262, 268, in which the Court of Eminent Domain also stated that there was no specific rule in point and applied § 7 of the Civil Code, even though we do not mention the case of *López* v. *District Court, supra*, we did apply it upon saying ". . . if it were proved that the defendant was in possession of the condemned farm subsequent to the date of the order of taking, the plaintiff would in any event be entitled to receive a reasonable amount for the use thereof. *Cf. Ball* v. *Vilá*, 67 P.R.R. 388."

██ The error assigned by the defendant as to nonpayment of interest by the plaintiff on the sum granted in excess of the amount deposited, was also committed. In *Housing Authority* v. *Sagastivelza, supra*, we were met with this same situation for there the Court of Eminent Domain set forth in its judgment that the same was entered without interest of any kind considering that the defendant had retained, after condemnation, the possession and enjoyment of the condemned farm and we held that pursuant to § 5(b)

of the Eminent Domain Act, as amended by Act No. 105 of May 7, 1948, it was the duty of the court to order the condemnor to pay interest at 6 per cent on the difference between the amount fixed as just compensation and the sum deposited.

Even though the decisions are conflicting as to the doctrine known as the "set off" of the value of the use of the condemned property against the accrued interest, the predominant rule, even in the absence of an express provision such as that contained in § 5(b) of our Act, is to the effect that retention of possession by the condemnee does not affect his right to receive interest. See Annotations in 32 A.L.R. 98; 96 A.L.R. 150; 111 A.L.R. 1299; 33 Ill. L. Rev. 361.

We shall now consider and decide whether the plaintiff was entitled, under the proved facts herein, to a reasonable amount for the use of the condemned properties while they were in the possession of the defendant after the expiration of the term granted to him upon being summoned to surrender possession. We have no doubt that the evidence supports the findings of the court to the effect that defendant's possession was in good faith, inasmuch as he was informed in the Department of the Interior that there was no need to rush the surrender, as it would take at least one or two years for the road works to begin (in fact they had not yet begun at the time of the trial), that the Commissioner of the Interior gave him some extensions of time to surrender possession, the last one being that in which the Commissioner expressly accepted that in order to remove the machinery, the structures had to be torn down and gave him permission to proceed therewith. It was further proved that in order to reinstall defendant's block factory somewhere else in his property, he had to build new structures.

There is nothing in the evidence which tends to show that the plaintiff tried in any manner to take possession of the condemned properties and that the defendant refused to sur-

render them. Nor was there any agreement between the parties as to the payment of rent by the defendant nor did the plaintiff or the defendant request the court to fix a rental under § 5(a) of the Act, as construed in *López* v. *District Court, supra.*

Undoubtedly the plaintiff could have taken possession of the condemned properties at any time after January 25, 1948, and if the defendant had refused to surrender them, the court was authorized to enter such orders as may have been necessary to enforce plaintiff's right to the possession. Even in those cases where the plaintiff has not acquired title to the condemned property under § 5(a), he may obtain possession of said property under § 5(c) of the Eminent Domain Act as additioned by Act No. 216 of March 27, 1946 (Sess. Laws, p. 422) but, prior to the taking of such possession, every requirement must have been provided for in order that plaintiff make just compensation for said possession, pursuant to the procedure established in that Section.

The defendant argues that so far the People of Puerto Rico has in no case sought to charge for the use of condemned properties of which it has not taken possession despite having been vested with dominion title. This is an error, for the *Sagastivelza* case, *supra*, shows that there also the plaintiff claimed the fruits received by the defendant during the entire time it was in possession thereof and we held that even assuming that the provisions of §§ 283 to 300 of the Civil Code were not in point, the plaintiff would *in any event* be entitled to receive a reasonable amount for the use thereof.

The defendant maintains that the correct procedure to be followed in these cases is that established in *United States* v. *6,576.27 Acres of Land, etc.*, 77 F. Supp. 244 (D. C. N. D., 1948). Accepting that the procedure established there may be followed under § 5(a) of our Act (equivalent to the corresponding Section of the Federal statute, 40 U.S.C.A., § 258 a, as we said in *López* v. *District Court, supra*) said case militates against the defendant since he did

not follow it. It was decided there that an order having been entered providing for the delivery on April 9, 1948, of the condemned property, title to which had been vested in the United States, the court was authorized, under § 258 (a), *and at the request of the defendant condemnees*, to extend the term of possession of the defendants to allow them to harvest their crops until December 1, 1948, it having been shown that the works of public utility for which the property had been condemned would not be begun during said term. This extension was granted notwithstanding the strong opposition of the Government which alleged that since title had been vested in it, the power to fix the terms upon which the defendants could remain in possession rested with it and not with the Court. Upon rejecting this contention the court said:

"The 'power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession . . .' [4] means that the Court, upon whom such power is so conferred, can designate the actual time at which the Government may take physical possession of the property condemned, the manner in which such physical possession shall be delivered, and the terms thereof. 'Terms' embrace, under the circumstances existing here, the power on the part of the Court to say that owners whose lands have been 'taken' in, for example, the middle of the harvesting season, shall have the right to complete the harvesting of their crops in an orderly manner and remove from the premises in an orderly manner such of their property as they have a right to take with them. The fixing of the time of possession and the terms of possession must, of course, be exercised reasonably and with due regard for the needs of the Government and the rights of the owners. . . ."

---

[4] Section 5 (a) of our Act, insofar as equivalent to § 258 (a) provides the following:

"Upon the filing of the declaration of taking, the court shall have power to fix the time within which, and the terms upon which the natural or artificial person in possession of the property the object of the proceeding shall surrender material possession to the *expropriating party*. . . ."

In amending its order extending the term for the defendants to surrender possession, the court provided that "the former owners shall pay to the Government for their use of their former lands rentals usual and customary in the vicinity."

As may be seen, the defendant in the present case, far from adhering to the practice which he himself argues should be followed in these cases, remained idle. He continued in the possession of the condemned property rather by tolerance of the owner, that is, plaintiff, than by any agreement, whether express or implied, on the part of the Commissioner of the Interior, if he had power to do so, that the defendant would not have to pay for the use and enjoyment of said property. It is true that the plaintiff did not resort to the court either, as he could have done before the trial, to request that the reasonable value for the use of the property be fixed, but this does not mean that he waived his right to request it or that he was precluded from doing so, as it did, during the trial by means of a supplementary complaint, under Rule 15 (d) of Civil Procedure, even though he erroneously entitled it amended complaint.

In said supplementary complaint the plaintiff requested the defendant to pay "rent from the day on which he was requested to surrender the condemned premises until the day that he actually surrendered them" at a monthly rate of $168.06 and also requested that "the amount to which the People of Puerto Rico is entitled for rent . . ." be deducted "from the compensation to be paid for the condemned parcel and the buildings . . ."

In answering the amended complaint the defendant admitted that he had been in possession until June 30, 1949, but that it was with the consent of the People of Puerto Rico and that he was never requested or told to pay any rent. He also set up several special defenses substantially to the effect that in the condemnation proceeding he did not have to pay any compensation for "rent" because none had

been stipulated or fixed by the court beforehand, that the claim was untimely and that the Court of Eminent Domain lacked jurisdiction to decide plaintiff's claim.

According to § 5(a), *supra*, and under the authority of *López* v. *District Court*, *supra*, the lower court had jurisdiction and plaintiff's claim was timely.

As we have said, the evidence showed that in order to remove the machinery from defendant's factory it was necessary to destroy the buildings condemned by the plaintiff. However, plaintiff at no time destroyed said buildings to facilitate their removal. On the contrary defendant proceeded on his own account to tear down the buildings with plaintiff's consent. On the other hand we have no doubt that the defendant, who enjoyed the use of the condemned property while being in its possession, should pay to the plaintiff a reasonable amount for said use. *Authority* v. *Sagastivelza, supra*. In view of the fact that the lower court did not decide this question but merely applied, erroneously, § 7 of the Civil Code, we believe that the determination of the said reasonable amount under the attendant circumstances, should be decided at first instance by said court, in the light of the evidence presented as to the value of the use and the time during which he benefited by the condemned property. Consequently the case shall be remanded for that purpose. In deciding this question the court shall take into consideration the fact that there was no contract between the parties and that defendant's obligation should be limited to the time during which he actually used the condemned property without including the time it took him to tear down the buildings and remove the machinery therefrom.

The third error assigned by the plaintiff and defendant's fourth and fifth assignments are intimately related and involve the same questions. Plaintiff alleges that the court erred in granting to defendant $900 for the construction of an access from one of the remaining parcels of

his property to the new highway and in refusing to admit evidence as to the special benefits received by the two remaining parcels of said property. Defendant maintains that the court erred in granting the cost of one access ($900) instead of two accesses which were necessary and in admitting evidence on the alleged benefits that would be derived by the rest of defendant's property by reason of the proposed highway.

Although the Court of Eminent Domain included in its judgment conclusions of fact and of law, it made no finding as to whether the remnant of defendant's property would receive any special benefit from the proposed highway in contraposition to the benefits that would accrue to the community as a whole. The record shows that the court admitted plaintiff's evidence to prove special benefits, which evidence was eliminated at defendant's request and later re-admitted. (T. E. pp. 36–37, 128–131, 172–173.) The logical conclusion is that the lower court considered that it had not been sufficiently proved that the remnant of defendant's property had received any special benefits.

There is a divergence of opinion as to whether the benefits received by the remaining property due to the use of the condemned parcel may be considered as a partial or total set off against the damages for said property. Apparently it is a well-settled rule that only special or direct benefits received by the property not condemned should be considered but not the general benefits that the community may derive by reason of the proposed work. We so indicated in *People v. Garcia, supra,* p. 486 and we have long ago decided it since 1912 in *American Railroad Co.* v. *Quiñones,* 18 P.R.R. 720, 724 when we said: "Quiñones cannot be deemed indemnified for damages by the benefits that even through the increased value of his lands by virtue of the branch in question may have resulted to him, since such benefits will never pertain to him exclusively but will be common to all the proprietors of the district wherein he lives." On this matter see anno-

tation in 145 A.L.R. 7 and 3 Nichols on Eminent Domain, 3d ed., p. 38, § 8.62 *et seq.*

We have carefully examined all the evidence introduced on this particular and we do not believe that the lower court committed manifest error in weighing the evidence and holding that it was not proved that the remaining parcels of defendant's property would receive any special benefit. Defendant's property is bounded on the East by the road leading from Ponce to La Playa. After segregating the condemned parcel the remaining property adjoins that same road from Ponce to La Playa and also the "Ponce By Pass" to be constructed across the condemned parcel and other properties which have been taken for the same purpose and which will receive the same advantages from said new means of communication as defendant's. Under these circumstances we believe that the benefit is of a general character to the community. 145 A.L.R. 101.

 As to granting $900 to defendant as the cost of the opening of an access to the new highway from one of the parcels of the remaining property, identified under letter "A", and the failure to make that same allowance for the opening of another access from the second parcel of the remaining property identified under letter "B," the court stated in its third conclusion of law the following:

"3. Since the condemned parcel divides the remaining part of the principal property of the defendant into two parcels, the latter claims EIGHT THOUSAND DOLLARS ($8,000) for parcel (A). In the plan attached to the record we have marked with letters (A) and (B) the two remaining parcels. Parcel (A) has an approximate area of 2,000 square meters. During the trial Mr. Guillermo González informed the court that the defendant disclaimed any compensation for damages for the segregation of parcel (B).

"With the exception noted hereinafter we believe that parcel (A) has suffered no assessable depreciation because of the taking. The area of 2,000 square meters facilitates its use for various purposes. The electric wires that now cross over said

property are the same wires that existed before the condemnation. Although the grade of the highway to be constructed in the condemned parcel shall be slightly lower than in Hostos Avenue, we believe that the defendant should be paid the cost of the opening of the access from parcel (A) to the new highway, which, according to witness Alfredo Méndez, is NINE HUNDRED DOLLARS ($900)."

Indeed, as the Transcript of Evidence shows, pp. 237–8, while Alfredo Méndez, plaintiff's expert witness, was testifying, the following took place:

"Q. What is your conclusion, if any, as to the amount of damages that would be caused to these two parcels upon being divided?

"A. The damages caused to these two parcels are equivalent to the cost of opening an access to the proposed highway.

"Q. To each parcel?

"A. To each parcel.

"Q. *You mean, there would be two accesses?*

"A. There would be two accesses, one to each parcel.

"Mr. González: We asked for severance damages only as to parcel 'A'; *we disclaimed any severance damages as to parcel 'B'.*

". . . . . . .

"Mr. González: *As to that we disclaimed any severance damages as to parcel 'B'.*

"The Court: Your claim is only as to parcel 'A'?

"Mr. González: We ask for severance damages only as to parcel 'A' and the value of the condemned property *but we make no claim as to the larger parcel.*

"The Court: You base your claim not only on the access thereto but also on the theory that it remains useless.

"Mr. Romanace: But as to whether it is useless or not the other witness testified that he confined himself only as to the access to said parcel.

"Mr. González: *We say that we should not refer to the other* parcel because we are not making any claim as to it.

"Mr. Romanace: The situation is as follows: My colleague cross-examined witness Zambrana and one of the questions was to the effect that irrespective of any special benefit that might be received by parcel 'B', *in what would the damages consist and how would he classify them, in what amount, and Mr. Zam-*

*brana at the last minute testified as to the cost of opening an access to the new highway.*

"Mr. González: I am claiming nothing for that; *I want nothing as to an access to parcel 'B.' My only claim is as to the damages caused to the condemned parcel and **damages** as to parcel 'A.'* (Italics ours.)

The expert witness then testified that the cost of the two accesses to parcels 'A' and 'B' would be $1,800 but since the matter had been limited to one access the cost would be $900.

Notwithstanding the express waiver made by the defendant that he made no claim as to parcel 'B,' that he disclaimed anything as to the access of parcel 'B,' on appeal he argues that his statements should be considered in connection with the position he had assumed as to the fact that parcel 'A' was wholly useless and consequently in that position he could not admit as measure of damages the cost of construction of any access and for that reason the testimony of the expert witness was limited to parcel 'A'; that as the court refused defendant's theory that parcel 'A' had been made useless and adopted as a measure of damages the cost of the access, it would be unfair to limit the amount of compensation to one half inasmuch as both parcels 'A' and 'B' are equally low in relation to the road; that it would be a strict and stern construction of his statements such as would deny plaintiff the damages which it has admitted having suffered, that is, the cost of both accesses, as a penalty for having adopted a different theory and for being consistent therewith at the trial.

We have stated defendant's argument in full and in our opinion it is untenable. It is entirely applicable to the position he assumed as to parcel "A," that is, he insisted at all times that said parcel had remained wholly useless and claimed damages for its total value. The court rejected this contention and only granted the value of the cost of opening an access to said parcel.[5] As to parcel "B" the position

[5] This action is assigned by the defendant as another error independent from that which we are now considering.

assumed by the defendant was entirely different. He repeatedly stated that he disclaimed any compensation for severance damages to said parcel as well as the value of an access to it. We do not see how he can now complain that the court did not grant him that which he expressly refused to claim. Neither the error assigned by defendant nor the one assigned by the plaintiff was committed. The testimony of Méndez, expert witness for plaintiff itself, showed that the damage caused to parcel "A" was set off by the opening of an access at a cost of $900.

 We now turn to consider the other errors assigned by defendant.

He alleges that the court erred in appraising the condemned parcel at $8,000 only. He admits that the assignment is directed to the weighing of the evidence but argues that the error is so manifest that, as a question of law, the judgment should be modified and a higher compensation awarded.

Ernesto Zambrana, the only expert to testify for plaintiff, appraised the condemned parcel at the rate of $1 per square meter. The parcel measured 6143.7989 square meters, which would give it a value of $6,143.79. Witness Zambrana had been working for one year as appraiser of the Department of the Interior but he never made any assessments of lands in Ponce prior to the assessment in the present condemnation case.

As to the appraisal of the parcel, defendant's witnesses were: *Carlos Clavell*, who testified that he had been Manager of the National City Bank, Ponce Branch, for five years and that at the time of the trial he had been appointed by the Treasurer of Puerto Rico member of the General Assessment Board of the Island; he has been engaged in the real estate business for more than twenty years, he was in charge of the sales of the land adjacent to the condemned parcel and participated in the sale of 31,000 and odd square meters to the development Company for the Textron factory

in 1945, at the rate of $1 per square meter; he appraised defendant's parcel at an average of $4.50 per square meter because the part fronting Hostos Avenue (Ponce–Playa Road) is worth $6 per square meter; he stated that after the sale of the land for the Textron Company was advertised the price of the adjoining land increased. *José A. Ferré*, Vice President of the Ponce Cement and of the Porto Rico Iron Works of Ponce situated in Hostos Avenue at a distance of one and a half kilometers from defendant's land testified that he had purchased land on Hostos Avenue; he explained in detail the various transactions made in Ponce and affirms that defendant's parcel is worth from $4 to $5 per square meter. To that same effect *Enrique Vázquez Reyes*, a qualified expert, testified that when the needlework industry was established in that region and after it was made known that the Textron Company would establish its factory there, the whole zone became as if it "contained gold" and assessed the parcel at $5 per square meter.

The court, in its conclusions of fact, after referring to the evidence in general terms stated the following:

*The parties have agreed that from an agricultural point of view, the soil is very good, but that the best use for this parcel is for industrial purposes, that is, for the construction of buildings for factories and other industries.* In fact, the entire property of 6.97 cuerdas belonging to defendant was devoted to the operation of the industry of making cement blocks used for the walls of buildings.

"We shall not go into the details of our analysis of the evidence admitted in this case but as a result thereof we reach the conclusion that the just and reasonable market value of the condemned parcel on June 1947 was EIGHT THOUSAND DOLLARS ($8,000) ." (Italics ours.)

Plaintiff had deposited $16,568.76 as the value of the land with the buildings. By stipulation of the parties it was agreed that the buildings were worth $14,893.75, leaving a balance of $1,675.01 as the value of the condemned land. The court increased the value to $8,000 for a piece of approx-

imately one and a half cuerdas of land. It also granted $491.68, which were also stipulated by the parties, as compensation for the sidewalks and pavement. Under the attendant circumstances we are of the opinion that the error assigned was not committed. The fact that the appraisal made by the court is not in harmony with the assessment of the witnesses of either side, does not mean, as defendant alleges, that its conclusion is not supported by the evidence. We have held that in cases of this sort the court does not have to follow blindly the opinion of the parties. *Housing Authority* v. *Viera, ante*, p. 683, and cases therein cited.

The next error assigned by the defendant refers to the failure to admit in evidence several letters by virtue of which defendant granted an option to the Seven-Up Bottling Co. Inc., for the purchase of part of the condemned land at the rate of $4 per square meter. The reason for not admitting this evidence was that defendant's wife did not participate in the transaction and the contract of option was void, citing *Encarnación* v. *Salim*, 69 P.R.R. 715.

Defendant contends that said case is inapposite because there the husband and wife, Mr. and Mrs. Salim, alleged that the contract was void while in the present case the contract is attacked collaterally by a third person, that is, by plaintiff.

We shall not stop to decide whether the distinction made by the defendant has any merit because we consider that the error was not commmitted on other grounds.

In the letters in question the defendant granted to the Seven-Up Bottling Co. Inc., an option for sale of a parcel of his land at the rate of $4 a meter. This option expired originally on April 15, 1947, and was later extended until April 30, 1947.

There is nothing in the evidence to show that the Seven-Up Bottling Co. Inc., enforced its right of option within the period granted by defendant or that the contract of sale

was perfected between the parties prior to the commencement of the condemnation in this case on June 20, 1947. It is true that the letters tended to prove the option granted, but such evidence is inadmissible in condemnation cases. We so held in *People* v. *Heirs of Quiñones*, 71 P.R.R. 242 and it has been likewise decided in other jurisdictions, *State* v. *Nelson*, 2 N. W. 2d 572; Annotation in 155 A.L.R. 262. As was said in the *Nelson* case: "An option is not a sale. Many considerations may enter into the purpose of acquiring an option, and unless it ripens into a sale it should not be admitted as evidence of value."

▉▉▉▉▉▉ Lastly, defendant alleges that the court erred in not granting as damages the total value of the strip of land marked "A" which remained useless as a result of its severance from the principal property.

We have already referred to parcels "A" and "B." They are now located on the northern and southern parts of the condemned parcel. Parcel "A" consists of about two thousand square meters. It measures 105 meters long by 15 meters wide in some places and 20 meters wide in others. Defendant's evidence tended to show that said strip of land would remain five feet lower than the proposed highway; that the filling would cost about $4 a meter, that is, more or less the same value given by defendant to his land; that although said parcel has 105 meters fronting the new highway, it is only 15 or 20 meters deep and that would prevent its subdivision or the erecting of any building thereon; that the parcel would be flooded unless filled in. We have also said that the court limited the damages caused to this parcel to the cost incurred in an access from said parcel to the highway which is estimated at $900.

Defendant alleges that his evidence as well as plaintiff's showed that in order to open said access it was necessary to use land belonging to the People of Puerto Rico, that is, land already taken. In fact, Zambrana and Méndez, Jr., plaintiff's witnesses, admitted that in order to open the

access, plaintiff's land would have to be used, the latter specifying that the construction of the embankment or access of $900 depended on whether a piece of 10.50 meters of land belonging to the plaintiff could be used and that said access would not be feasible without the use of said land. (T. E. pp. 217, 240, 242, 249, and 250.)

Under these circumstances we believe that the court erred in limiting the damages caused to parcel "A" to $900, which is the cost of opening an access to the new highway, inasmuch as plaintiff's evidence showed that said access could not be constructed without using land belonging to plaintiff to which the latter had not given its consent. The measure of damages of parcel "A" could not be limited to the cost of the access but to the decrease of its market value insofar as it was affected by the condemnation, taking into consideration the possibility that said access could not be opened. See in *People* v. *García, supra,* the quotation from Nicholas, p. 513. As to this particular too it is the duty of the Court of Eminent Domain, in the first instance, to determine the amount of said damages.

The judgment will be set aside and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Negrón Fernández took no part in the decision of this case.