UNITED STATES of America, Petitioner-Plaintiff,

v.

CERTAIN INTERESTS IN PROPERTY SITUATE IN the BOROUGH OF BROOKLYN, COUNTY OF KINGS, State of NEW YORK, and Dayton Development Fort Hamilton Corp., et al., Defendants.

No. 60 CD 1177.

United States District Court
E. D. New York.

Oct. 10, 1961.

Harry T. Dolan, Brooklyn, N. Y., Sp. Asst. to Atty. Gen., for the motion.

George B. Kenner, by Jay A. Gaines, New York City, for defendants.

RAYFIEL, District Judge.

The plaintiff has moved for an order directing (1) that the defendants Dayton Development Fort Hamilton Corp. and Fort Hamilton Manor, Inc., file with this Court an accounting of all income received by them for rent or services for the period between December 15, 1960 and February 1, 1961 from the tenants occupying space in the real property hereinafter referred to, and of all proper and necessary expenditures made by them for that period in the management of said property, and (2) that upon the confirmation of said accounting the said defendants pay to the petitioner-plaintiff the amount due it thereunder, with interest, after deducting therefrom a *reasonable* fee for their services as managing agents during said period.

This is an action in condemnation. It was instituted for the purpose of acquiring all the estate, right, title and interest of the said defendants in two parcels of real property situated at Fort Hamilton, in the Borough of Brooklyn, County of Kings, City and State of New York, more particularly described in the complaint. The land involved herein was owned by the Government, and was occupied by the defendants under a long-term lease. Between 1951 and 1953 the defendants erected thereon a number of buildings, divided into some 670 apartments, containing an aggregate of 1900 rooms, either leased to or available for military personnel.

The complaint herein was filed on December 15, 1960. Simultaneously therewith the Government, pursuant to the provisions of Section 258a of Title 40 United States Code Annotated, filed a Declaration of Taking, and thereupon deposited in the Registry of this Court the sum of $1,250,000, as estimated just compensation for the defendants' estate, right, title and interest acquired thereunder. Pursuant to orders of this Court made under said Section on January 4, 1961 and February 20, 1961, the said sum of $1,250,000 was disbursed to the defendants from the Registry of the Court.

Section 258a provides, *inter alia*, that "upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have [the] power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable." On December 16, 1960, the day following the vesting in the Government under said Declaration of the Defendants' estate, right, title and interest in the property, an ex parte order was entered granting possession thereof to the Government as of February 1, 1961. The order made no provision respecting encumbrances, rents, taxes, assessments, insurance or other charges.

It is undisputed, however, that prior to the commencement of this action, and early during its pendency, there were discussions between a Government representative and the president of the defendants, the last of such discussions having been held, according to their counsel, on the very day of, but prior to the filing of the Declaration of Taking. Both sides agreed that because of the nature of the property and its multiple occupancy it would be advisable to effect an orderly transition in the management and operation thereof.

The Government contends that as a result of such discussions a "mutual understanding was arrived at whereunder the said defendant-corporations would manage, operate and service" the property between December 15, 1960 and February 1, 1961 "as agents and representatives of the Government, and, upon surrender of possession, render a true accounting of all income received and expenses incurred during said period." As aforementioned, the defendants do not deny that discussions were had respecting the management and operation of the property during the period in question, but contend that no understanding or agreement was reached, as claimed by the Government. They argue, on the contrary, that their continued possession and operation of the property was intended solely "as an aid to the United States in securing an orderly transition to government operation", and that the Government is not entitled to an accounting or compensation for that period.

The facts appear to support the Government's contention. On December 22, 1960, seven days after the filing of the Declaration of Taking, William A. Rowland, Chief of the Real Estate Division of the U. S. Army Corps of Engineers, New York District, wrote to William Zukerman, President of the defendant corporations. The letter, after referring to discussions had at his office on December 15, 1960, in which Mr. Zukerman and the writer and other Government personnel had participated, stated that the Government had acquired all of the defendants' right, title and interest in the property in question on December 15, 1960, and that an order had been entered granting possession to the Government as of February 1, 1961.

The letter went on to state "In clarification of some of the problems, it is out (sic) intention that the following provisions will form the basis for determination of accounts to be adjusted for the interim period between the acquisition date and the date the Government actually commences operation of the project.

"a. *Income and operating Expenses and Service Charges.*

"Sponsor corporations (the defendants) will collect all rentals and other income, constituting gross income, and will apply same to payment of operating expenses. A management fee of 5% of gross income will be allowed sponsor corporations. *Any excess of income after deduction of expenses, inclusive of management fee, is to be paid to the Government.* An itemized account showing the amount collected will be submitted, and similarly a statement will be furnished showing in reasonable detail the expenses incurred for maintenance and operation of the project". (Emphasis and matter in parenthesis supplied.) Other provisions respecting taxes, inter-

est, insurance, credits, etc., not pertinent to the determination of plaintiff's motion, were contained in the letter.

The defendants did not reply to the letter. The affidavit of Jay A. Gaines, associated with the defendants' attorney, submitted in opposition to the Government's motion, admits its receipt by the defendants, but states: "The corporations never agreed to these terms. Subsequent discussions were had at the Department's request but the issue was never resolved."

The defendants do not dispute that by operation of the Statute the title to their estate, right, title and interest in the property vested in the Government immediately after it filed its Declaration of Taking and deposited with the Clerk of this Court the estimated just compensation therefor. They were not obliged to continue the management and operation of the property thereafter. Nevertheless, they did so, even after the receipt by them on or about December 23, 1960, of the aforementioned letter setting forth the terms and conditions under which they were to manage the property until February 1, 1961, the date fixed in the order for the surrender of possession thereof to the Government.

Neither side has cited, nor has the Court been able to find, a case directly in point. The authorities cited by the Government merely affirm what the Statute makes crystal clear—the Government's right to condemn property, and the vesting of title thereto in the Government as of the date of the filing of the Declaration of Taking.

United States v. 6576.27 Acres of Land, D.C., 77 F.Supp. 244, cited by the defendants, is factually wholly inapposite. To the extent that the Court therein exercised its equity powers that case favors the Government's contention herein.

 In the light of their discussions with Government representatives prior to the Declaration of Taking, it is my opinion that their continued management and operation of the property after the filing of the Declaration, and particularly after their receipt of the Government's letter of December 22, 1960, constituted an acceptance of the terms and conditions therein stated, but even if that were not so, the equities would demand an accounting. The defendants should not be permitted to retain the avails of what they must have known from their experience to be a profitable enterprise without rendering an account of their stewardship, as provided for in the letter of December 22, 1960, and attorning to the Government as indicated by said accounting.

Accordingly, the plaintiff's motion is in all respects granted.